## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

DARRYN DEATON, individually and
as Personal Representative of the Estate of
WALTER DEATON,

KRISTI D. PATTERSON, individually and
as Personal Representative of the Estate of
WALTER DEATON,

           Plaintiffs,

     vs.

UNITED STATES STEEL
CORPORATION; RADIATOR
SPECIALTY CORPORATION;
SAFETY-KLEEN SYSTEMS, INC.;
EXXON MOBIL CORPORATION;
CRC INDUSTRIES, INC.

         Defendants.

NO.  2:19-cv-204-RMG

Removed from the Court of Common Pleas,
Charleston County, South Carolina
No. 2018-CP-10-5820

# NOTICE OF REMOVAL

# EXHIBIT "B"

## COMPLAINT, COURT OF COMMON PLEAS, PHILADELPHIA COUNTY, PENNSYLVANIA, NO. 160804202

**LOCKS LAW FIRM**
**MICHAEL B. LEH, ESQUIRE**
**ATTORNEY I.D. NO.: 42962**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**MARK S. WEINSTEIN, ESQUIRE**
**ATTORNEY I.D. NO.: 319902**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
mleh@lockslaw.com
adupont@lockslaw.com
mweinstein@lockslaw.com
**(215) 893-0100**

**THIS IS A MAJOR JURY TRIAL. AN**
**ASSESSMENT OF DAMAGES**
**HEARING IS REQUIRED.**

**ATTORNEYS FOR PLAINTIFFS**

Filed and Attested by the
Office of Judicial Records
17 OCT 2016 10:13 pm
E. FORTE

---

| | | |
|---|---|---|
| **DARRYL W. DEATON, Executor for the** | : | |
| **Estate of WALTER C. DEATON** | : | **COURT OF COMMON PLEAS** |
| **154 Silica Springs** | : | **PHILADELPHIA COUNTY** |
| **Gaffney, SC 29340** | : | |
| | : | |
| **KRISTI D. PATTERSON, Executrix for the** | : | **AUGUST TERM, 2016** |
| **Estate of WALTER C. DEATON** | : | |
| **1561 Wilkinsville Hwy** | : | **NO: 160804202** |
| **Gaffney, SC 29340** | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | : | |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **SUNOCO, INC. (R&M) f/k/a** | : | |
| **Sun Company, Inc. and** | : | |
| **f/k/a/ Sun Oil Company, Inc.** | : | |
| **3801 West Chester Pike** | : | |
| **Newtown Square, PA 19073** | : | |
| | : | |
| **SAFETY-KLEEN SYSTEMS, INC.** | : | |
| **5360 Legacy Drive** | : | |
| **Building 2, Suite 100** | : | |
| **Plano, TX  75024** | : | |
| | : | |

**UNITED STATES STEEL CORPORATION**    :
**600 Grant Street, Room 1500**    :
**Pittsburgh, PA 15219-2800**    :
    :
**RADIATOR SPECIALTY COMPANY**    :
**600 Radiator Road**    :
**Indian Trail, NC 28079**    :
    :
**CRC INDUSTRIES, INC.**    :
**885 Louis Drive**    :
**Warminster, PA 18974**    :
    :
**EXXONMOBIL CORPORATION**    :
**5959 Las Colinas Boulevard**    :
**Irving, TX  75039**    :
    :
**3M COMPANY**    :
**3M Corp. Headquarters, 3M Ctr.**    :
**St. Paul, MN 55144**    :
    :
          **Defendants.**    :

---

## PLAINTIFFS' COMPLAINT

## NOTICE TO PLEAD
### CODE 2T

You have been sued in this Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defense objections to the claims set forth against you.

You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claims in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

Le han demandado a usted en la corte.  Si desea defenderse Contra las quejas presentadas es absolutamente necesario que usted responda dentro de 20 dias despues de ser servideo Con esta demanda y aviso.  Para defenderse, es necesario que used, o su abogado, registre con la corte en forma escrita, el punto de vista de usted y cualquier objeccion contra las quejas en esta demanda.

Recuerde: Si usted no reponde a esta demanda, se puede proseguir con el processo sin su participacion.  Entonces, la corte puede, sin notificarlo, decidir a favor del demandante y  requerira que usted cumpla con todas las provisiones de esta demanda.  Por razon De esa decision, es posible que Usted pueda perder dinero, propiedad o estros derechos importantes.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENET.  SI NO TIENE ABOGADO O SI NOTIENE EL DINERO SUFICIENTE  DE  PAGAR TAL SERVICIO.  VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PAPA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107, (215) 238-1701

Case ID: 160804202

**LOCKS LAW FIRM**
**MICHAEL B. LEH, ESQUIRE**
**ATTORNEY I.D. NO.: 42962**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**MARK S. WEINSTEIN, ESQUIRE**
**ATTORNEY I.D. NO.: 319902**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
**mleh@lockslaw.com**
**adupont@lockslaw.com**
**mweinstein@lockslaw.com**
**(215) 893-0100**

**THIS IS A MAJOR JURY TRIAL. AN**
**ASSESSMENT OF DAMAGES**
**HEARING IS REQUIRED.**

**ATTORNEYS FOR PLAINTIFFS**

---

| | | |
|---|---|---|
| **DARRYL W. DEATON, Executor for the** | : | |
| **Estate of WALTER C. DEATON** | : | **COURT OF COMMON PLEAS** |
| **154 Silica Springs** | : | **PHILADELPHIA COUNTY** |
| **Gaffney, SC 29340** | : | |
| | : | |
| **KRISTI D. PATTERSON, Executrix for the** | : | **AUGUST TERM, 2016** |
| **Estate of WALTER C. DEATON** | : | |
| **1561 Wilkinsville Hwy** | : | **NO: 160804202** |
| **Gaffney, SC 29340** | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | : | |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **SUNOCO, INC. (R&M) f/k/a** | : | |
| **Sun Company, Inc. and** | : | |
| **f/k/a/ Sun Oil Company, Inc.** | : | |
| **3801 West Chester Pike** | : | |
| **Newtown Square, PA 19073** | : | |
| | : | |
| **SAFETY-KLEEN SYSTEMS, INC.** | : | |
| **5360 Legacy Drive** | : | |
| **Building 2, Suite 100** | : | |
| **Plano, TX  75024** | : | |

3

Case ID: 160804202

UNITED STATES STEEL CORPORATION :
600 Grant Street, Room 1500 :
Pittsburgh, PA 15219-2800 :
 :
RADIATOR SPECIALTY COMPANY :
600 Radiator Road :
Indian Trail, NC 28079 :
 :
CRC INDUSTRIES, INC. :
885 Louis Drive :
Warminster, PA 18974 :
 :
EXXONMOBIL CORPORATION :
5959 Las Colinas Boulevard :
Irving, TX 75039 :
 :
3M COMPANY :
3M Corp. Headquarters, 3M Ctr. :
St. Paul, MN 55144 :
 :
   Defendants. :

_____

## PLAINTIFFS' CIVIL ACTION COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court pursuant to 42 Pa.C.S. §5301, since every Defendant continuously and systematically conducts and/or transacts a part of its general business within the Commonwealth of Pennsylvania and the County of Philadelphia, and/or is incorporated under or qualified as a foreign corporation under the laws of this Commonwealth, and/or consented to jurisdiction.

2. Venue in this Court is proper pursuant to Pa.R.C.P. 1006 and Pa.R.C.P. 2179, since every Defendant regularly conducts business within the County of Philadelphia, and trans-actions and occurrences out of which the cause of action arose occurred in Philadelphia County

4

Case ID: 160804202

and because Defendants made tortious decisions, acts  and omissions with regards to the manufacture, sale, design, marketing and warnings for the benzene–containing products. Venue is also proper, in addition to other reasons averred herein, because SUNOCO, INC. (R&M) during times relevant hereto maintained, its corporate headquarters within the City and County of Philadelphia and operates two refineries within the City and County of Philadelphia, where, upon information and belief, gasoline and solvents used in co-Defendants' products are and were refined.

### FACTS COMMON TO ALL COUNTS

3.    Plaintiffs, Darryl E. Deaton and Kristi D. Patterson, Executor and Executrix for the Estate of Walter C. Deaton ("Plaintiff" and/or "Decedent"), reside at the above stated address.

4.    At all times material hereto, Decedent, Walter C. Deaton was employed by the following employers (hereinafter "employer") where he was exposed to Defendants' benzene-containing products as a Maintenance Technician and worker:

a.  Duke Energy Corporation, sites located in North Carolina and South Carolina, 1969-1970 and 1972-1996.

b.  Daniels Construction Company, Inc., sites located in North Carolina and South Carolina, 1970-1972.

Plaintiff also sustained non-occupational exposures to benzene-containing products.

5.    As a condition of his employment, and in certain non-occupational activities, Plaintiff worked directly and indirectly with and was directly and indirectly exposed to, on a daily or almost daily basis, various benzene-containing products, including but not limited to,

5

penetrating solvents, solvents, cleaners, and adhesives (hereinafter or "benzene-containing prod-

ucts") which products and/or their ingredients, were manufactured, refined, designed, produced,

processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied

and/or otherwise placed into the stream of commerce by the Defendants.

6.    Plaintiff worked directly and indirectly with and was directly and indirectly ex-

posed to, on a daily or almost daily basis, benzene and various benzene-containing ingredients,

including but not limited to, benzene, xylene, toluene, mineral spirits, hexane, naphthas, ethyl-

benzene and other hydrocarbons, which were manufactured, refined, designed, produced, pro-

cessed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/

or otherwise placed into the stream of commerce by the Defendants.

7.    Plaintiff was exposed to the Defendants' benzene-containing products, and to the

vapors, aerosols, mists and fogs from said products, by means of inhalation and dermal absorp-

tion (from direct dermal contact with said products, dermal contact with clothes contaminated by

said products and/or dermal contact with benzene vapors in the air.).

8.    As a direct and proximate result of his exposure to the Defendants' benzene-con-

taining products and the Defendants' wrongful conduct, Plaintiff was caused to contract Acute

Myeloid Leukemia (hereinafter "AML"). Decedent was diagnosed with AML by a bone marrow

biopsy report on or after August 11, 2014. Decedent suffered multiple symptoms and side

effects of his AML and the treatments therefore. As the direct and proximate result of Walter C.

Deaton's AML, Plaintiff died on August 31, 2014. Plaintiffs, including Walter C. Deaton, did not

learn of a connection between Decedent's cancer and his exposure to benzene until after the

Case ID: 160804202

Decedent's death.

## DEFENDANTS

9.     At all times material hereto, Defendants acted through their agents, ostensible agents, servants or employees, who were acting within the scope of their employment on the business of the Defendants. The Defendants' agents and ostensible agents included their employ-ees and other persons and entities, since the Defendants are all corporations that must act through their employees and others that the Plaintiffs are not able to identify by name without conducting discovery.

10.     The Defendants are all corporations, companies or other business entities which, during all times material hereto and for a time prior thereto, manufactured, produced, processed, compounded, converted, sold, distributed, marketed and/or otherwise placed into the stream of commerce, benzene-containing products and/or raw material ingredients used in benzene-con-taining products, all of which were used by and around Plaintiff and Plaintiff's employers, or are the successors to and/or otherwise liable for companies which engaged in said conduct.

11.     The Defendants are:

    a)   UNITED STATES STEEL CORPORATION (hereinafter "US Steel" or "Defendant") is believed to  be a Delaware corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. US Steel manufactured, refined, designed, produced, processed, compounded, con-

7

verted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene and benzene-containing solvents used as ingredients in co-defendants' products including but not limited to raffinate in Liquid Wrench, to which the Plaintiff was exposed and directly and proximately caused his AML. US Steel refined Raffinate in Pennsylvania; gained knowledge of benzene and Raffiante's ability to cause fatal blood poisoning and cancer in Pennsylvania; made tortious decisions to sell benzene and benzene-containing Raffinate in Pennsylvania; made tortious decisions to place its financial interested ahead of the health and safety of the customers and end users of its benzene and benzene-containing Raffinate in Pennsylvania; made tortious decisions not to warn or adequately warn of the health hazards and cancer risk of benzene and benzene-containing Raffinate in Pennsylvania; made tortious decisions regarding the formulation and design of benzene-containing Raffinate in Pennsylvania.

b) CRC INDUSTRIES, INC. (hereinafter "CRC Industries" or "Defendant") upon information and belief is a Pennsylvania corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. Defendant CRC Industries manufactured, produced, pro-

8

Case ID: 160804202

cessed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce products containing benzene, as a known ingredient and/or as a contaminant and/or component of which it knew or should have known. Plaintiff was directly and/or indirectly exposed, in the manner described herein, to this Defendant's benzene containing products, including but not limited to CRC penetrating solvents and cleaners, to which the Plaintiff was exposed and which directly and proximately caused his AML.

c) SUNOCO, INC. (R&M) f/k/a Sun Company, Inc. and Sun Oil Company, Inc. (hereinafter "Sunoco" or "Defendant") upon information and belief, is a Pennsylvania corporation, with a principal place of business at the above address in the City and County of Philadelphia, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. Sunoco's corporate headquarters, during times relevant hereto, were located in the City and County of Philadelphia. Sunoco owned and operated and maintains a joint venture in no less than two refineries (the Girard Point Refinery and the Point Breeze Refinery) in the County of Philadelphia, where gasoline, benzene and benzene-containing solvent products are refined, including, upon information and belief, solvents used as ingredients in co-Defendants' products, to which the Plaintiff was exposed and which directly and

9

Case ID: 160804202

proximately caused his AML. Sunoco tests products, including gasoline, benzene and benzene-containing solvents, in the City and County of Philadelphia. Sunoco writes warnings and instructions for products, including gasoline, benzene and benzene-containing solvents, in Philadelphia. Sunoco maintains documents and electronic information on the chemical properties and health hazards of gasoline, benzene and benzene-containing solvents in Philadelphia. Sunoco employees with knowledge of the above facts work in Philadelphia.

Upon information and belief, Sunoco has assumed certain liabilities for the Liquid Wrench product and/or ingredients thereof, including Raffinate, through its acquisition of Aristech Chemical Company. On October 14, 1986, USX Corporation formed Aristech Chemical Company as a wholly owned subsidiary. On December 4, 1986, USX Corporation transferred all of its assets and liabilities of the USS Chemicals Division to Aristech Chemical Company. On or about November 9, 2000, Sunoco, Inc. (R&M) acquired the stock, assets and liabilities of Aristech Chemical Company, including liabilities for USS Chemicals Division that existed prior to December 4, 1986. Additionally, upon information and belief, Sunoco manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products to

10

which the Plaintiff was exposed, including but not limited to benzene-containing solvents which were used as ingredients in co-Defendants' benzene-containing products.

Upon information and belief Sunoco supplied benzene containing mineral spirits to Safety-Kleen which was distributed as Safety-Kleen parts washing solvent that the Plaintiff was exposed to. Upon information and belief, Sunoco supplied benzene-containing oils, Toluol and Xylol which were used in the co-Defendant, CRC Industries, Inc.'s products, as well as other benzene containing solvents to the co-Defendants for use as ingredients in their benzene containing products, to which the Plaintiff was exposed and which directly and proximately caused his AML. Upon information and belief Sunoco supplied other solvent ingredients to these and other Defendants which will be identified through the course of discovery.

d)  SAFETY-KLEEN SYSTEMS, INC. (hereinafter "Safety-Kleen" or "Defendant"), is believed to be a Wisconsin corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia.  Defendant, Safety-Kleen manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-

11

Case ID: 160804202

containing products, including but not limited to Safety-Kleen parts-washing machines and Safety-Kleen 105 Solvent Recycled parts-washing solvents, to which the Plaintiff was exposed and which directly and proximately caused his AML.

e) RADIATOR SPECIALTY COMPANY (hereinafter "Radiator Specialty Co." or "Defendant") is believed to be a North Carolina corporation with a principal place of business at the above-stated address, yet which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. Defendant Radiator Specialty Co. manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to Liquid Wrench, to which the Plaintiff was exposed and which directly and proximately caused his AML.

f) Defendant, EXXON MOBIL CORPORATION (hereinafter "ExxonMobil" or "Defendant"), is believed to be a New Jersey corporation with a principal place of business at the above-stated address, yet which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. Defendant ExxonMobil manufactured, refined, designed, produced, processed, compounded,

12

Case ID: 160804202

converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing printing products, including ExxonMobil benzene-containing Varsol fluids and mineral spirits, to which the Plaintiff was exposed and which directly and proximately caused his AML.

g) Defendant, 3M COMPANY (hereinafter "3M" or "Defendant"),  is believed to be a Delaware corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. Defendant, 3M manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to 3M solvents and ingredients, to which the Plaintiff was exposed and which directly and proximately caused his AML.

### COUNT I – NEGLIGENCE & GROSS NEGLIGENCE

12.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

13.     Plaintiff used, worked with, around and in close proximity to, handled, inhaled,

13

Case ID: 160804202

dermally absorbed, ingested and was otherwise directly and indirectly exposed to Defendants'
benzene-containing products and/or vapors therefrom, during the ordinary, foreseeable and in-
tended use of the Defendants' benzene-containing products.

14.     Defendants knew, or in the exercise of reasonable care, could and/or should have
known that persons such as Plaintiff would used, worked with, around and in close proximity to,
handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed
to their benzene-containing products and/or vapors therefrom.

15.     Defendants knew, should and/or reasonably could have known that benzene caus-
es blood and bone marrow poising and damage, damage to DNA, chromosome damage, cancer,
leukemia and other blood and bone marrow disease and damage, and is otherwise extremely
dangerous to human health.

16.     Defendants knew, should and/or could have reasonably known that their benzene-
containing products contained benzene.

17.     Defendants knew, should and/or reasonably could have known that their benzene-
containing products were carcinogenic, leukemogenic, inherently defective, ultra-hazardous,
dangerous, deleterious, poisonous and otherwise highly harmful to the body and health of Plain-
tiff and persons similarly situated.

18.     Plaintiff, his employers and similarly situated persons did not and could not know
of the nature and extent of the danger to their bodies and health, including the risk for cancer and
leukemia, caused by exposure to the Defendants' benzene-containing products and/or vapors
therefrom.

14

Case ID: 160804202

19.     The Defendants knew, should and/or reasonably could have known that Plaintiff and other persons similarly situated, would come into direct and indirect contact with, handle, inhale, ingest, dermally absorb and otherwise be exposed to benzene during the ordinary and foreseeable use of said benzene-containing products.

20.     The Defendants knew, should and/or reasonably could have known that Plaintiff, his employers and other persons similarly situated did not know, understand or fully appreciate nature and extent of the danger to their bodies and health, including the risk for cancer and leukemia, caused by exposure to the Defendants' benzene-containing products and/or vapors therefrom.

21.     The Defendants had a duty to all consumers, workers and employers to exercise reasonable care in the creation, manufacturing, designing, formulating, refining, producing, processing, packaging, marketing, selling, warning, distributing and otherwise placing their respective benzene-containing products into the stream of commerce, including a duty to assure that the products did not pose a risk of injury, harm, disease and death, including cancer and leukemia.

22.     Defendants breached their duty and were negligent and grossly negligent because, knowing all of the above, they:

> a.     Manufactured, produced, designed, formulated, processed, packaged, compounded, converted, sold, marketed, re-labeled, supplied, distributed and/or otherwise placed in the stream of commerce products that contained benzene, i.e. the benzene-containing products;
>
> b.     Failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contain benzene;
>
> c.     Failed to take precautions to warn and/or adequately warn Plaintiff and his employers of the dangers to their health, including the nature and extent thereof,

15

Case ID: 160804202

caused by exposure to benzene and the benzene-containing products, including the risk for contracting leukemia;

d.      Failed to take precautions to warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene-containing products;

e.      Failed and omitted to place any warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

f.      Continued to manufacture, produce, process, sell, market, distribute, supply and/or otherwise place into the stream of commerce known cancer-causing products, to-wit, benzene-containing products;

g.      Failed and omitted to package the said chemical products so that, in the ordinary and foreseeable use and handling of them, Plaintiff and other persons similarly situated would not come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to benzene-containing products and/or vapors therefrom;

h.      Failed and omitted to take all reasonable, necessary, proper and prudent measures to assure that all necessary warnings, notices and instructions as to the products' benzene content, leukemogenic, carcinogenic, deleterious, poisonous and dangerous nature, and the reasonable and necessary safe guards and procedures for use in conjunction with the products, reached the actual end user, and were complied with by Plaintiff's employers and end users including Plaintiff and other persons similarly situated;

i.      Defendants knew, should and/or could have known that the failure to warn and/or adequately warn of the risks, dangers and harm created by exposure to the benzene-containing products, and the reasonably safe and sufficient precautions, practices, personal protective equipment, wearing apparel, appliances and engineering controls to use with the benzene-containing products, would act as an inducement to Plaintiff and other end users similarly situated to come into direct

16

and indirect contact with, handle, inhale, dermally absorb and otherwise be ex-
posed to benzene-containing products and/or vapors therefrom, without proper
and adequate protection;

j.      Defendants failed to train and advise the Plaintiff and his employers of
how to adopt and implement a safe, sufficient and proper plan and method to safe-
ly handle and use their benzene-containing products, resulting in the creation of
an atmosphere that the Defendants' benzene-containing products were relatively
safe to work with and around, handle, come in direct and indirect contact with,
inhale, ingest, dermally absorb and otherwise be exposed to;

k.      Defendants knew, should and/or could have known, but also failed to take
reasonable, sufficient and proper precautions reasonably calculated to recommend
methods to improve the work environment, such as that of Plaintiff's employer, to
which Defendants sold, marketed, distributed, supplied and/or otherwise placed
into the stream of commerce, benzene-containing products;

l.      Failed to comply with all federal, state, local and trade statutes, codes,
regulations and ordinances relating to the benzene content of their products, ac-
tions required to determine and analyze the hazardous nature of their products and
the warnings and instructions accompanying same, including but not limited to 29
CFR 1910.1200; 29 CFR 1910.1028; and, 49 CFR Parts 100-199;

m.      Failed to take all reasonable, necessary, proper and prudent measures to
test their benzene-containing products to determine the products' benzene content
and the quantity of benzene released into the breathing zone of the end user, and
dermally absorbed by the end user, during the ordinary, intended and foreseeable
use thereof;

n.      Failed to test their benzene-containing products for health hazards, includ-
ing lymphohematopoietic disease;

o.      Failed to test the adequacy of labels, warnings and instructions appearing
upon or distributed with their benzene-containing products;

p.      Failed to take all reasonable, necessary, proper and prudent measures to
make their benzene-containing products safe for their intended and foreseeable
use.

q.      Failed to properly and adequately manufacture, design, produce and
process their products so as to eliminate all benzene content thereof;

17

Case ID: 160804202

r.    Failed to research, develop, design, manufacture, produce, market and sell safer alternative products, to wit products which did not contain benzene;

p.    Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products;

q.    Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective; and

r.    For these reasons, Defendants grossly deviated from the ordinary standard of care.

23.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffered from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which caused  him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancer to AML.

24.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

25.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has lost and will continue to lose economic benefits.

26.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

Case ID: 160804202

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), for together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, punitive damages, interest, costs and delay damages.

## COUNT II - BREACH OF WARRANTY

27.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

28.     Defendants, individually, jointly and severally expressly and/or impliedly warranted, including under the Pennsylvania Uniform Commercial Code, to Plaintiff and other end users of their benzene-containing products, who were similarly situated, that the benzene-containing products, were merchantable, reasonably fit and safe for their intended, stated and described purpose and application, when in fact they were not.

29.     Defendants, individually, jointly and severally breached said warranties to Plaintiff, in that their benzene-containing products were inherently defective, ultra hazardous, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not properly merchantable and not safe, as marketed, for their foreseeable use and purpose, in that they contained benzene and caused lymphohematopoietic diseases, including AML, were defectively designed and lacked warnings, instructions and training, or adequate and sufficient warnings, instructions and training, as more fully set forth in Counts I, III and IV, and including because:

19

Case ID: 160804202

a.       They contained benzene and benzene causes cancer, leukemia and other harm to the blood and bone marrow of humans.

b.       They lacked all elements necessary to make them safe for their intended and foreseeable use;

c.       The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contained benzene;

d.       They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting cancer, leukemia and other blood and bone marrow disease;

e.       They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene-containing products;

f.       There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

g.       Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

h.       Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene-containing products;

i.       They failed to recommend methods to improve the work environment;

20

Case ID: 160804202

j.     The Defendants failed to develop alternative products, including products which did not contain benzene;

k.     The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene, as contaminants in, or as ingredients of their benzene-containing products;

l.     The ordinary and foreseeable use of the Defendants' benzene-containing products, or those benzene-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra hazardous activity;

m.     The Defendants' benzene-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene content;

n.     The Defendants' benzene-containing products were defective in that they failed to meet their consumer's expectations for safety;

o.     Were packaged in a manner that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

p.     Contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

q.     Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products; and,

r.     Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective.

30.     Defendants' warranties were made both orally and in writing, and Plaintiffs are no longer in possession of the written materials upon which such warranties were made.

31.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

21

Case ID: 160804202

contracted and suffers from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which cause him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

32.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff is prevented from engaging in those activities from which he derives life's pleasures.

33.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will lose benefits and earnings capacity.

34.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, which expenses may continue to accrue, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), for together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, punitive damages, interest, costs and delay damages.

## COUNT III - STRICT LIABILITY

35.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set

Case ID: 160804202

forth herein with particularity.

36.     Defendants are and were, at all times material hereto, in the business of manufacturing, refining, designing, producing, processing, compounding, converting, packaging, selling, distributing, marketing, re-labeling, supplying and/or otherwise placing into the stream of commerce the benzene-containing products.

37.     The benzene-containing products were expected to and did reach the Plaintiff and his employers without substantial change in the condition in which they were sold.

38.     The benzene-containing products were defective when they left the Defendants' possession, custody and control.

39.     Plaintiff and his employers were the intended and foreseeable users of the Defendants' benzene-containing products, and it was intended by and foreseeable to the Defendants that the benzene-containing products would be used in the manner that the Plaintiff and his employers used them in.

40.     The Defendants' benzene-containing products were defective because:

a.     They contained benzene and benzene causes cancer, leukemia and other harm to the blood and bone marrow of humans.

b.     They lacked all elements necessary to make them safe for their intended and foreseeable use;

c.     The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contained benzene;

d.     They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including

23

Case ID: 160804202

the risk for contracting cancer, leukemia and other blood and bone marrow disease;

e.    They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene-containing products;

f.    There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

g.    Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and other wise be exposed to;

h.    Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene-containing products;

i.    They failed to recommend methods to improve the work environment;

j.    The Defendants failed to develop alternative products, including products which did not contain benzene;

k.    The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene, as contaminants in, or as ingredients of their benzene-containing products;

l.    The ordinary and foreseeable use of the Defendants' benzene-containing products, or those benzene-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra hazardous

24

Case ID: 160804202

activity;

m.    The Defendants' benzene-containing products were also defectively de-
signed in that their hazards outweighed the benefit, if any, of the products' ben-
zene content;

n.    The Defendants' benzene-containing products were defective in that they
failed to meet their consumer's expectations for safety;

o.    Were packaged in a manner that increased the risk for exposure to benzene
and increased the amount of benzene exposure end users sustained;

p.    Contained directions for use that increased the risk for exposure to ben-
zene and increased the amount of benzene exposure end users sustained; and

q.    The Defendants' benzene-containing products were defective in that the
Defendants manufactured and sold the same products, or substantially similar
products, that did not contain benzene which were used for the same purposes as
their benzene-containing products and which were equally effective.


41.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

contracted and suffered from AML, and multiple side effects, conditions, illnesses and symptoms

caused by AML and the medical treatments necessitated thereby, which caused him pain, suffer-

ing, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and

increased susceptibility to infection and progression of his cancer to AML.

42.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

was prevented from engaging in those activities from which he derives life's pleasures.

43.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

has in the past, continues to and in the future will lose benefits and earnings capacity.

44.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

Case ID: 160804202

was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, attorney fees and delay damages.

## COUNT IV - INTENTIONAL TORT - BATTERY & FRAUD

45.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

46.    Defendants committed the intentional tort of battery by causing the Plaintiff's exposure to benzene-containing products and benzene knowing that those exposures would cause harm to the Plaintiff.

47.    Defendants knew, foresaw and intended that their benzene-containing products were used in the manner in which Plaintiff and Plaintiff's employers used them, and that benzene and the benzene-containing products would be released into the atmosphere while using the benzene-containing products, and Plaintiff and others similarly situated would work with, inhale, ingest, dermally absorb, handle or directly and indirectly come into contact with, and/or otherwise be exposed to benzene, which created a hazardous and unsafe condition and risk to the

26

Case ID: 160804202

health of Plaintiff and others similarly situated.

48.    Defendants knew that their benzene-containing products were inherently defective, ultra-hazardous, dangerous, deleterious, poisonous, carcinogenic, leukemogenic and otherwise highly harmful to the Plaintiff and persons similarly situated.

49.    Defendants knew that their products, identified herein, contained benzene.

50.    Defendants knew that end users, such as the Plaintiff would work with and around, and be exposed to benzene as the result of the use of the Defendants' benzene-containing products in the course of their work related duties and other activities.

51.    Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that benzene was capable of causing leukemia and other blood and bone marrow disorders, including AML.

52.    Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that there is no safe level of exposure to benzene.

53.    Defendants were capable of manufacturing, producing and processing the identified products in a manner that eliminated or significantly reduced their benzene content.

54.    Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that their benzene-containing products placed the Plaintiff, and other end users similarly situated, at a significantly increased risk for contracting aplastic anemia, cancer, leukemia and other blood and bone marrow disorders, including AML, as a direct and proximate result of exposure to the benzene-containing products.

Case ID: 160804202

55.    Defendants knew that Plaintiff, his employers and coworkers, and other end users similarly situated, did not know of or appreciate that that benzene-containing products' contained benzene content, or that benzene and the benzene-containing products were capability of causing cancer, leukemia and other blood and bone marrow disorders, including AML.

56.    Defendants knew that Plaintiff, his employers and coworkers, and other end users similarly situated, did not know of the proper and necessary personal protective equipment, appliances, wearing apparel, engineering controls, procedures and practices for use in conjunction with the benzene-containing products to prevent or minimize benzene exposure and the risk for contracting cancer, leukemia and other blood and bone marrow disorders, including AML.

57.    Defendants knew that their failure to warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including AML, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to their benzene-containing products without necessary and proper personal protective equipment, practices and procedures in order to reduce or eliminate benzene exposure and leukemia risk.

58.    Defendants knew that their failures, by intent and omission, to warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including AML, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to benzene and place himself at risk for contracting leukemia.

59.    Defendants knew that their failures to warn, instruct and train the Plaintiff, his

Case ID: 160804202

employers and coworkers of the proper and necessary personal protective equipment, work prac-

tices and procedure to avoid benzene exposure and the risk of contracting cancer, leukemia and

other blood and bone marrow disorders, including AML, would act as, and did in fact act as, an

inducement for the Plaintiff to continually expose himself to benzene and place himself at risk

for contracting leukemia, through the use of their identified products without proper and neces-

sary personal protective equipment, work practices and procedures.

60.    Defendants knew that their failures, by intent and omission, to warn, instruct and

train the Plaintiff, his employers and coworkers would cause Plaintiff to aggravate his condition

and situation, by preventing him from avoiding further exposure to these benzene-containing

products, taking proper precautions to minimize or eliminate any risk from such exposure, seek-

ing medical opinions regarding the true state of his medical condition or changing the nature of

his job description or areas of work, so he would have no contact with Defendants' benzene-con-

taining products.

61.    Defendants knew that properly and adequately warning, instructing and training

the Plaintiff, his employers, coworkers and the general public of the benzene-containing prod-

ucts' benzene content and capability of causing cancer, leukemia and other blood and bone mar-

row disorders, including AML, would be detrimental to their business interests, as such would

deter the purchase and use of said products, by the Plaintiff, his employers, coworkers and the

general public.

62.    Despite all of this knowledge, Defendants willfully and wantonly, through affir-

mative acts or omissions:

29

Case ID: 160804202

a.    Manufactured, produced, processed, marketed, sold and distributed to the Plaintiff, his employers and coworkers, products which contained a known carcinogenic and leukemogenic compound, benzene;

b.    Did not eliminate or minimize the benzene content of the identified benzene-containing products;

c.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content;

d.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' ability to cause cancer, leukemia and other blood and bone marrow disorders, including AML;

e.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the insidious, highly hazardous and deleterious nature of benzene;

f.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

g.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

h.    Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers of the products' benzene content, an their cancer and leukemia risk;

i.    Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

j.    Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

k.    Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers

Case ID: 160804202

and coworkers of the products' benzene content, an their cancer and leukemia risk;

l.      Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

m.      Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

n.      Did not train and advise Plaintiff, his employers and coworkers of how to adopt and implement a safe, sufficient and proper plan and method to properly handle and use their benzene-containing products, resulting in the creation of an atmosphere at Plaintiff's employer, that the Defendants' benzene-containing products were relatively safe to handle, come in direct and indirect contact with, inhale, ingest and dermally absorb;

o.      Sacrificed the health and safety of the workers and other end users of their benzene-containing products in order to further the Defendants' economic advantage, convenience and profit;

p.      Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products; and,

q.      Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective.

r.      Defendants committed fraud by withholding information of the health hazards of benzene and their products and by making misrepresentations of material fact to co-Defendants, Plaintiff, his coworkers and employer.

s.      Plaintiff, his employers and coworkers relied upon the Defendants for information and warnings regarding the products' health hazards and cancer risk and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety.

t.      Defendants manufacturing end products using ingredients manufactured

31

Case ID: 160804202

by co-Defendants relied upon those co-Defendants for information and warnings regarding the ingredients and products health hazards and cancer risk.

u.     Defendants possessed knowledge and information of the health hazards of benzene, including its ability to cause fatal blood poisoning, cancer, leukemia, DNA damage, chromosome damages, and other damage, disease and cancer to the blood and bone marrow.

v.     Defendants withheld and otherwise failed to disclose their knowledge and information of the health hazards of benzene, including its ability to cause fatal blood poisoning, cancer, leukemia, DNA damage, chromosome damages, and other damage, disease and cancer of the blood and bone marrow.

w.     Defendants knew that the warnings and information they supplied for their benzene-containing products were untrue, did not believe it to be true, were indifferent as to whether it was true, or because of special circumstances had a duty to know whether the statements were true.

x.     A special relationship exists between the Plaintiff, his employers, the Defendants, as well as between Defendants which manufactured ingredients and co-Defendants which manufactured products using those ingredients.

63.     Defendants acts and omissions were unreasonable in their character, and made in disregard of a risk known to them or so obvious them that they must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

64.     Defendants acts and omission acts and omissions demonstrated a conscious indifference to their consequences, namely causing the Plaintiff to contract AML and other injuries identified herein.

65.     Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff to contract leukemia.

32

Case ID: 160804202

66.    Defendants' intentional conduct in causing the Plaintiff to be exposed to benzene, did in fact cause physical harm to the Plaintiff by directly and proximately causing him to contract AML and other injuries and damages as set forth herein

67.    As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff contracted and suffered from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancer.

68.    As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

69.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will lose benefits and earnings capacity.

70.    As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00),

Case ID: 160804202

for together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, punitive damages, interest, costs and delay damages.

## COUNT V - WRONGFUL DEATH ACT

71.    Plaintiff's Executrix hereby adopts and incorporates by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said para-graphs were set forth herein with particularity.

72.    The Wrongful Death Action is brought, through the Plaintiff's Executor and Executrix, by and on behalf of each of the beneficiaries of the Decedent, individually and separately, Darryl W. Deaton and Kristi D. Patterson, who reside at the above-stated addresses (hereinafter "Wrongful Death Beneficiary Plaintiffs").

73.    Due to the conduct or failure to act on the part of the Defendants, the Decedent has left Darryl W. Deaton and Kristi D. Patterson as beneficiaries of Walter C. Deaton and who are otherwise entitled to recover from his death

74.    The Wrongful Death Beneficiary Plaintiffs, by reason of the death of Walter C. Deaton, have suffered financial losses, including contributions from the time of Walter C. Deaton's death. Pursuant to the Wrongful Death Act beneficiaries are entitled to recover for con-tributions for things such as shelter, food, clothing, medical care, education, entertainment, gifts and recreation, financial support and services.

75.    The Wrongful Death Beneficiary Plaintiffs, by reason of the death of Walter C. Deaton have incurred the expenses of administration of the Estate including funeral expenses.

34

Case ID: 160804202

76.     The Wrongful Death Beneficiary Plaintiffs have suffered the loss of Walter C. Deaton's guidance, tutelage, moral upbringing, support, society, comfort, love, companionship, support, services and consortium to which they are entitled.

77.     Plaintiffs Executor and Executrix are entitled to recover, in addition to other damages, amounts for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing Walter C. Deaton's death, to the extent those are not recovered by way of the Survival Action.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), for together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, punitive damages, interest, costs and delay damages.

## COUNT VI - SURVIVAL ACT

78.     Plaintiffs Executor and Executrix hereby adopts and incorporates by reference each of the foregoing paragraphs, as if each of the paragraphs were set forth below.

79.     Plaintiffs bring this action on behalf of the Estate of Walter C. Deaton, under and by virtue of the Act of June 30, 1972, P L. 500, No. 164, 20 T.P.S.A. §3373.

80.     Plaintiffs Executor and Executrix claims on behalf of the Estate, damages suffered by the reason of the personal injury and death of Walter C. Deaton, including but not limited to pain and suffering and loss of life's pleasures, as more fully described above.

81.     Plaintiffs Executor and Executrix claims on behalf of said Estate the lost future

Case ID: 160804202

benefits and emoluments of Walter C. Deaton, who was approximately 72 years old at the time of his death, subject to proof at the time of trial.

82.    Plaintiffs Executor and Executrix claims on behalf of said Estate the loss of pension, retirement plan and social security benefits to which Walter C. Deaton would have been entitled, subject to proof at the time of trial.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), for together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, punitive damages, interest, costs and delay damages.

Respectfully submitted,

**LOCKS LAW FIRM**

**DATED:** October 17, 2016          **By:**    /s/ Andrew J. DuPont
                                               **ANDREW J. DUPONT, ESQUIRE**
                                               **MARK S. WEINSTEIN, ESQUIRE**
                                               **Attorneys for Plaintiffs**

36

Case ID: 160804202

**LOCKS LAW FIRM**
**MICHAEL B. LEH, ESQUIRE**
**ATTORNEY I.D. NO.: 42962**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**MARK S. WEINSTEIN, ESQUIRE**
**ATTORNEY I.D. NO.: 319902**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
**mleh@lockslaw.com**
**adupont@lockslaw.com**
**mweinstein@lockslaw.com**
**(215) 893-0100**

**THIS IS A MAJOR JURY TRIAL. AN**
**ASSESSMENT OF DAMAGES**
**HEARING IS REQUIRED.**

**ATTORNEYS FOR PLAINTIFFS**

_____

| | | |
|---|---|---|
| **DARRYL W. DEATON, Executor for the** | : | |
| **Estate of WALTER C. DEATON** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
| | : | |
| **KRISTI D. PATTERSON, Executrix for the** | : | **AUGUST TERM, 2016** |
| **Estate of WALTER C. DEATON** | : | |
| | : | **NO: 160804202** |
| **Plaintiffs,** | : | **JURY TRIAL DEMANDED** |
| **vs.** | : | |
| | : | |
| **SUNOCO, INC. (R&M), et al.** | : | |
| | : | |
| **Defendants.** | : | |

_____

## CERTIFICATE OF SERVICE

    I. Mark S. Weinstein, Esquire, of the Locks Law Firm hereby certify that Plaintiffs' Complaint in the above-captioned matter was filed on this date.

                                    **LOCKS LAW FIRM**

**DATED:** October 17, 2016      **By:**   /s/ Mark S. Weinstein_____
                                      **ANDREW J. DUPONT, ESQUIRE**
                                      **MARK S. WEINSTEIN, ESQUIRE**
                                      **Attorneys for Plaintiffs**

Case ID: 160804202